AKTIESELSKABET STAVANGEREN v. HUBBARD-ZEMURRAY S. S. CO.

(Circuit Court of Appeals, Fifth Circuit. March 25, 1918.)

No. 3148.

1. SHIPPING ⊙⇒43—CHARTER PARTIES—DAMAGE—AMOUNT RECOVERABLE—MATTERS WITHIN CONTEMPLATION OF PARTY.

Where a time charter allowed the charterer to direct the vessel's movements, and there was no undertaking by the owner to make any particular voyage, or to deliver a cargo within a stated time, losses suffered by the charterer on account of delay in delivering a particular cargo, intended for a holiday market, are not within the contemplation of the parties, and cannot be recovered, although the owner was responsible for the delay, which was due to the fault of the crew it provided.

2. STIPULATIONS ⊙⇒14(1)—CONSTRUCTION—EFFECT.

Where a charterer, libeled for a balance claimed to be due under charter party, filed a cross-libel, setting up damages on account of delayed delivery of a cargo, resulting from accident to the vessel, a stipulation that as a result of the accident the charterer was damaged in a specified sum is not an admission of the owner's liability for such damages.

3. SHIPPING ⊙⇒50—CHARTER PARTY—DUTY OF CONSTRUCTION.

Where a charter party required the owner to maintain the vessel in a thoroughly efficient state in hull and machinery, the charterer is entitled to reimbursement for assistance rendered in making repairs, which it was the duty of the owner to make.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Libel by the Aktieselskabet Stavangeren against the Hubbard-Zemurray Steamship Company, which filed a cross-libel. From a decree for libelant for the amount claimed, but for larger amount in favor of respondent on the cross-libel, libelant appeals. Modified and affirmed.

George H. Terriberry, of New Orleans, La., for appellant.

Solomon Wolff, of New Orleans, La., for appellee.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. The appellant, the owner of the Norwegian steamship Stavangeren, filed its libel in admiralty against the

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

appellee, the Hubbard-Zemurray Steamship Company, claiming $693.-40, the balance alleged to be due the appellant from the appellee under a time charter for the hire of the vessel by the appellee. The appellee filed an answer and cross-libel, which admitted that the amount claimed in the libel was due, but claimed that the appellee was damaged in the sum of $4,154.14 as the result of the delay of the vessel, when loaded with a cargo of bananas and cocoanuts, at Omoa, Honduras, bound for New Orleans, which delay was attributed to alleged negligence of the vessel's master and crew, resulting in an injury to the vessel, which had to be repaired before it could proceed on its voyage. The averments of the cross-libel showed that the items of damages it claimed were $100, the alleged value of services rendered by appellee's employés, which were necessary to enable the vessel to proceed with her voyage, and $4,054.14, the difference between what the bananas and cocoanuts were sold for in the New Orleans market and what the appellee would have received for them if advance orders for them, which had been given, had not been canceled because of the delay in their arrival. By its answer to the cross-libel appellant denied that it was indebted to the appellee in the sum claimed in the cross-libel, or in any sum whatsoever, and set up that under clauses and exceptions in the charter party, particularly clause No. 3 and clause No. 19, it was not responsible for damages resulting from the accident alleged in the cross-libel, even though that accident was caused by the mistake of the engineer in executing an order from the bridge.

The case was tried on an agreed statement of facts, which disclosed the following:

The ship had completed loading at Omoa a cargo of bananas and cocoanuts and at 12:30 a. m. of Friday, December 11, 1914, had started to leave that port for New Orleans, when, shortly after casting off her moorings, her rudder post was broken as a result of the engineer's failure properly to comply with an order signaled to him by the master. This necessitated the making of repairs, with the result that the ship did not leave Omoa until 11 p. m. Sunday, December 13, 1914. It arrived at New Orleans at 3 p. m. of December 18th, whereas it probably would have arrived there at about 3 p. m. of December 15th, if it had not met with the mishap at Omoa. Persons employed by the charterer assisted in making the required repairs.

"XII. It is agreed that, if any sum is due to respondent and cross-libelant for work done in repairing the vessel, the value of such work is fifty dollars ($50.00). * * *"

"XIV. While the ship was undergoing repairs at Omoa, from 12:30 p. m. of December 11, 1914, to 11 p. m. of December 13, 1914, 2 days and 22½ hours' hire of the ship was deducted by respondent and cross-libelant, in accordance with the charter party.

"XV. Cross-libelant had the entire reach of the ship, and all the fruit shipped on the vessel was the property of the cross-libelant.

"XVI. As a result of the accident to the ship, cross-libelant was damaged in the sum of $4,104.14, which includes $50 mentioned in article XII hereof."

What has been set out includes all that was before the court bearing upon the claims to damages asserted by the cross-libel. There was judgment, under the libel, in favor of the appellant and against the appellee for $693.40, with 5 per cent. per annum interest from judicial demand until paid, and costs of court, and judgment under the cross-libel, in favor of the appellee against the appellant, in the sum

of $4,104.14, with 5 per cent. per annum interest from judicial demand until paid, and all costs of suit.

[1] The provisions of the charter party, which constitute some of the grounds relied upon by appellant's counsel to defeat the claims of damages asserted by the cross-libel, are the following:

"3. That in the event of loss of time from deficiency of men or stores, breakdown of machinery, or damage preventing the working of the steamer for more than 24 hours at sea, the payment of hire shall cease until she be again in an efficient state to resume her service, redelivered at place of accident, or allowance therefor; and should she in consequence put into any port other than that to which she is bound, the port charges and pilotages at such port shall be borne by steamer's owners. Also if any loss of time from crew or stores not being on board in time, or from repairs to hull and machinery, which are for owners' account, not being complete after cargo and coals are on board and hour of sailing has been fixed by charterers, and notice given to captain, the time is lost to the owners' account. Steamer to be allowed one to two days every four months for cleaning boilers without loss of hire."

"19. That, should vessel be lost, any hire paid in advance and not earned (reckoning from the date of her loss) shall be returned to the charterers with 6 per cent. interest from date of loss; the act of God, the king's enemies, fire, restraints of princes, rulers, and people, and all other dangers and accidents of the seas, rivers, machinery, boilers, and steam navigation throughout this charter party, always excepted."

It seems that the only subject dealt with in clause 19 is the obligation of the owner, in the event of the loss of the vessel, to repay, with interest, what had been paid in advance and was not earned, and that this provision has no bearing on the question of the owner's liability to the charterer for the vessel's loss of time, whatever may be the cause of it. Clause 3 deals specifically with that subject. It seems that that clause so provided for the case of loss of time from damage, including such as is attributable to negligence of the owner's engineer, preventing the working of the vessel for more than 24 hours at sea, as to make the cessation of hire, until the vessel is again in efficient state to resume her service, the agreed compensation the charterer was to be entitled to for a loss of time so occasioned, and that the appellee, having received the benefit of a compliance with that provision, was not entitled to anything more because of loss of time so caused.

But it may be assumed, without being decided, that neither of the provisions quoted stands in the way of the appellee's recovery of any damages claimed in the cross-libel. It failed to show the existence of a state of facts entitling it to recover from the appellee the difference between what the cargo sold for and what it would have brought if most of the advance orders for parts of it had not been canceled because of the delayed arrival. The appellant hired the vessel, manned by its officers and crew, for a specified time, to be employed, on conditions stated, in carrying lawful merchandise and passengers between any safe ports in stated parts of the world, as directed by the charterer or its agents. It did not undertake to make the particular voyage in which the delay in question occurred. It did not obligate itself to deliver the cargo of bananas and cocoanuts at New Orleans within any stated time.

Furthermore, the losses due to the cancellation of advance orders

and the missing of the Christmas holidays trade were what is known as special damages, which arise from circumstances peculiar to the particular case, and which are not recoverable, unless those circumstances were communicated to or known by the party sought to be charged at the time the contract was made. 8 Ruling Case Law, 459–461; 10 Corpus Juris, 324. It was not proved or admitted that the appellant was apprized of such circumstances, either when the contract of hiring was made, or prior to the breaking of the rudder post at Omoa, or indeed at any time before the loss was sustained. The damages resulting by reason of the existence of such special circumstances, of which the party sought to be charged was not made aware, are disallowed, not because they are merely consequential or remote, but because they cannot fairly be considered as having been within the contemplation of the parties at the time of entering into the contract. Griffin v. Colver, 16 N. Y. 489, 69 Am. Dec. 718.

[2] The answer to the cross-libel put in issue the claims it asserted. The stipulation entered into, so far as it touched the matter of damages claimed in the cross-libel, was no more than an admission that, "as a result of the accident to the ship, cross-libelant was damaged in the sum of $4,104.14, which includes $50 mentioned" in a clause of the stipulation which stated the value of the service rendered by the appellee's employés in repairing the injury caused by the mishap. Evidently, $4,054.14 of the admitted damage was the difference stated in the cross-libel between what the cargo sold for and what would have been received for it, if the advance orders which had been given had not been canceled because of the delay in the vessel's arrival at New Orleans. But it was not admitted or proved that the appellant was answerable for those damages, or that the appellee sustained them under such circumstances as to be entitled to charge the appellant with liability for them. This item of damage was admitted, but a state of facts under which the appellant would be liable for it was neither admitted nor otherwise shown.

[3] The conclusion is that the decree rendered on the cross-libel was erroneous, in so far as the principal sum adjudged in favor of the appellee exceeded $50. The charter party made it the duty of the owner to maintain the vessel "in a thoroughly efficient state in hull and machinery for and during the services." This made the expense of repairs necessitated by the mishap at Omoa one to be borne by the owner. In making those repairs, the charterer (the appellee) contributed services, the value of which was agreed to be $50. That amount was properly adjudged in its favor.

The decree rendered on the cross-libel is modified, by making the principal sum adjudged in favor of the appellee against the appellant $50, instead of $4,104.14, and, as so modified, it is affirmed, with costs against the appellee.

Modified and affirmed.